Good morning and may it please the court. My name is William Janago and I represent the petitioner appellant Ann Marie Harrison. I'd like to reserve one minute of my time for rebuttal and I'll watch the clock to do that. Ms. Harrison is entitled to an evidentiary hearing because in her petition to the California Supreme Court she alleged detailed and specific facts that if true would entitle her to relief. And therefore, there can be no reasonable basis for the California Supreme Court's summary denial. There's really only two grounds on which the California Supreme Court could have denied her petition without a hearing. One is that they did not believe her allegations. And two, that they didn't matter, that they weren't material. We know they didn't deny it on the first ground, that is, that they weren't true, because there was a summary denial without citation to any other authority. Under People v. Duvall, when the California Supreme Court issues a summary denial and doesn't cite any other cases, that means that they've accepted the allegations as true and decided that you do not state, did not state a prima facie case. So that's the state court decision we're looking at here. Even if you don't accept that proposition, as responded, doesn't hear, the fact of the matter is that when you look at her allegations, this is not a case where there are conclusory assertions of a recanting witness. It is true that when the California Supreme Court gets a recantation that's just conclusory, they don't have to accept that as true. What you have here is the exact polar opposite. There are detailed and specific facts that really all fit together. And they begin with Mr. Lopez's initial interview. At that moment in time, he has no reason to falsely exculpate Ms. Harrison. In fact, it's better for him at that point to incriminate as many people as he can. What does he say? Mr. Tovar shot. We didn't know he was going to do it. Where is the clearest place in the record, counsel, in the April 6 interview where he disavows that your client made any statement before the shooting? As opposed to just the omission. The initial interview, it's at excerpts of record volume 2, page 113, page 7 of my opening brief. I'm looking at page 113. And what he says is, McElderry says, you guys just pulled up and Mona, referring to Ms. Harrison, slowed down. And Lopez, because he was telling her to stop. And then McElderry says, and he just, Lopez, you know I can tell she was pretty scared too. She was like, oh my God. So that is the moment in time when he, and just above that, you'll see also the reference to page 113. Was there any talk about shooting that guy before it happened? Well, that doesn't purport to be a full transcript of what went on. And it doesn't, to follow on Judge Kristen's question, it doesn't say that she didn't tell him to shoot. That's my point. The brief suggests that in the April 6 interview that was recorded, Lopez affirmatively stated that she didn't make any statement prior to the shooting. And I don't see that here. I just want to make sure you have every opportunity to show me what I'm missing. Well, there is no specific place where he affirmatively says, no, she didn't say anything. But when they asked him the question, he doesn't give that information. So I want to be clear on that. I don't want to be seen as sort of misrepresenting what's here in the record. That's what's in the record. Of course, he's not entirely responsive to the detective's question either. The detective says, because she knew he was going to shoot him, and he sort of answers something different. That's true, Judge Bybee. But remember how that contrasts with what happens at trial. At trial, what he says is that Tovar said to her, do you want me to shoot him? And Ms. Harrison said, yeah. I mean, that is night and day. I mean, I realize the first one is not as strong as I would like it to be. I mean, I get that. But when you compare that with what happened at trial, it's a night and day difference. Why is all of this relevant in light of Tovar's conversation with his cellmate that's recorded? Because if you accept as true the allegations in the declaration that Mr. Lopez gave post-trial, that means Tovar is not being truthful. Why would Tovar lie to a cellmate who's a fellow gang member when he's not sure whether his conversation is being recorded? He doesn't know he's being recorded. Why would he lie about that? Precisely because he feared retaliation from his gang for shooting somebody that was innocent. The sequence here is important. What happens is that while they're in the cell, at some point his cellmate says, well, he says something. There's our speaker here. Maybe we're being recorded. And it's at that point that Tovar then says, well, she told me to shoot him. And the reason he has, the motive he has to falsely incriminate her at that point is because he's going to be in trouble with his gang for shooting somebody who's innocent. Where is the evidence of the feared retribution? From the prosecution's gang expert, Mr. Kaye, who testified that that is something that Hispanic gangs, Latino gangs are known for. And did Harrison make this argument below in the California state courts? Yes, absolutely. Okay. And the jury evidently rejected it? Well, I don't know that. What makes that an unreasonable finding of fact or contrary to clearly established Supreme Court law? When you look at Mr. Lopez's declaration and you accept that it's true, then it clearly rebuts the. . . No, it gives you conflicting testimony. But we have a jury verdict here and we have arguments that have been previously presented to the California courts. It doesn't make those, it doesn't make their position unreasonable, does it? If you accept their proposition in the summary order, Judge Bybee, they accept that the allegations is true. And if you accept the allegations is true, that what Mr. Lopez said at trial is false and that what he said in his declaration is true, if you accept that proposition, that means Mr. Tovar is lying. And he had a reason to lie. And so that, the California Supreme Court itself was disavowing that part of the jury verdict when it issued its summary denial. And remember what happens, because after Tovar makes that statement, then they give it to Mr. Lopez. And then it looks like you've got this rock-solid case. And then you have McElderry who gets on the stand who says, well, he told me that in the hallway in the first day that we spoke. And it looks like it's an even more compelling case. But when you accept what Mr. Lopez said in his post-trial declaration is true, that is, that he didn't say that, and that they told him about that after the Tovar interview, that's where they got it from. That just wipes out Tovar's statement. There's no other way to resolve it. I'm not saying you have to believe it. What I am saying is that we should have an opportunity to have a hearing in front of a judge where Mr. Lopez gets on the stand and we're able to examine him and the judge is able to make a credibility determination. What do we do with the California trial judge's comment that he found Mr. Lopez's testimony credible? Again, what you have there is a misapprehension by the trial judge because he thought there was no cross-contamination here. That's really what was important to him. What he said was that you've got two people independently saying the same thing and there's no opportunity for collusion here because you've got Tovar on the one hand, you've got Lopez on the other hand, I'm going to admit it. And that makes sense. But then when you find out that Mr. Lopez only says this after Tovar does and he says in his declaration, they told me this is what Tovar said and that if I didn't say it, I was going to go from the witness stand to the defense counsel table, so I changed my story. So the trial judge was also misled by this false testimony because it seemed as if they were saying it independently. They were not. In fact, what happened was that occurred afterwards, so there was not the cross-contamination. I see that I have one minute left. Yes, you may do so. Thank you. Thank you, Mr. Sinego. Good morning. May it please the Court. Supervising Deputy Attorney General Michael Johnson on behalf of the warden. I think the basic problem with Petitioner's case is that it's essentially built on one factual allegation. It's a significant allegation that Michael Lopez would now disavow a portion of his trial testimony, but it doesn't really do all of the work that Petitioner needs it to do in the context of an Apui claim or a Brady claim. It's certainly very troubling. Can you tell me, why can't I find anything anywhere that tells me what Officer Lusk had to say about what was said in the hallway on April 6th? I don't think that Officer Lusk was called at trial, if my memory serves. I think McElderry testified at trial. And he testified that this wasn't on the recording, but it was a statement, a very significant statement that was made afterwards in the hallway, off record, and the other officer wasn't called at trial. Is that right? Yes. Yes. That's true. And the district court rightly pointed out that that's sort of a curious fact, but there are any number of explanations to that. I think the district court pointed out that the curious fact is that this experienced officer didn't put it in his report. That's correct. But that's Officer McElderry or Detective McElderry, not Lusk, right? Yes. Okay. Thank you. But I think on that issue, on the timing issue, and I think the district court rightly focused on this question, it's sort of one or two steps removed from the more fundamental question, whether there was false testimony at trial. And, again, this was an issue that arose as early as the preliminary hearing. This was an issue on which McElderry was cross-examined at trial. So it really boils down to this timing. And I understand Petitioner's argument that the timing is significant because, theoretically, it would bolster the Tovar statement, the recorded jail cell statement. But, again, I think we're now one or two steps away from whether there was false testimony at trial. But the main point I think I want to make is it's difficult and in the context of 2254D, I think impossible for Petitioner to make out either an Empui claim or a Brady claim on the basis of this one allegation, as significant as it is. And I think the court has rightly focused on the materiality issue, but I think it's equally important to look at government malfeasance. That, I think, is really the essence of an Empui claim or a Brady claim, some sort of government malfeasance. The problem there is that, according to Lopez, if we take Lopez's declaration as true, he didn't tell the police that he was going along to go along. Is that right? That's exactly the problem for Petitioner in this case. Not only does the allegation not support an Empui claim or a Brady claim, it cuts directly against it. And I think the same is true in terms of the claim that there was some sort of implied agreement, for example. The – and I guess I'm sort of viewing the other two claims as kind of appendages to the central claim that – that – Mr. Johnson. Yes. You may have answered this in answer to Judge Christen's question, but I didn't get it. Do you agree with counsel for the defendant and appellant that Lopez was told about Tovar's conversation before Lopez took the stand? Yes or no? No. No. I don't think that he established that, either in state court or in federal court. I think the – I think the record is murky, and I think that's the basis of the McElderry Empui claim. It was this timing issue of what came first. And that was something that was, I want to emphasize again, fleshed out at trial. So I don't know that it even fits comfortably within the box of a true Empui claim. Second question. Yes. When was the defense told about Tovar's statement? Tovar's recorded jail cell statement? Yes. To be frank, I don't know exactly the answer to that question. Certainly they knew about it prior to trial. Sometime prior to trial. Yes, because that was an issue at trial. Was the defense ever told that the Tovar statement had been made known to Lopez? No. I think that's the basis of the Brady claim, that the defense should have been told that. The record is unclear, and this is one of the points I made in my brief. The record is unclear on that. The Petitioner has never – Is your position that Lopez was never told about the Tovar conversation? No, I'm saying we don't know that. The record doesn't disclose – that's an allegation that's been made in the Habeas case that has yet to be proven. So your position, if I'm understanding your answer to Judge Bea's question correctly, is that the defense hasn't established that they weren't told something they ought to have been told under Brady? Exactly. Yes. Okay. So as the Supreme Court tells us, federal habeas relief for state prisoners is reserved for cases where there's been an extreme malfunction in the criminal – state court criminal justice system. That is to say, in order to support a Napuli claim, a Brady claim in this case, Petitioner has to show that no rational jurist could have rejected these claims. I think he hasn't come even close to making that showing under 2254D, and for that reason, Judge Lutz correctly denied the petition. Do you disagree with Mr. Genego's point that after Duval, that we are to presume that the California Supreme Court accepted the factual allegations in the Habeas? I think that's an interesting question. It's potentially a thorny question. I don't think we need to resolve it in this case. I think even assuming that Lopez lied at trial, that would establish only one element of the Napuli claim, and as we've discussed, Petitioner still can't show government should have known or knew that Paul Sessomani was present. He can't show materiality, as the district court pointed out. I think there is certainly post-Pinholster, post-Richter, we know that in a silent denial case, the record before the state court is what we're looking at for purposes of 2254D. The question then becomes, what's the scope of that record? Footnote 12 of Pinholster points out the general California rule, that the state court presumes the factual allegations to be true. I agree with that so far as it goes. As I pointed out in my brief, there are some limitations to that. The state court will not accept conclusory allegations. The state court will not accept hearsay allegations, et cetera. So I can envision a case in which there may be some sort of critical lynchpin allegation, where it's really a gray area. We don't know. Was this something the state court would have considered conclusory or not? I think that under 2254D, the presumption has to be that the state court acted constitutionally and we would win. But why would it be conclusory if the allegation were that Tovar's statement was made known to Lopez before Lopez testified? That's not very conclusory. It's very factual. Oh, just to be clear. Yes, Your Honor, just to be clear. I'm not saying that that allegation in this case was conclusory. I'm saying in some other hypothetical case, I think. Well, let's talk about this case. Sure. So you agree that this is not a situation that involves a conclusory allegation, which the Supreme Court of California would not have accepted? Yes. And that's why I don't think these tough issues about that pinholster question really need to be answered here. Thank you. Thank you, Mr. Johnson. Mr. Janaygo, you've got time reserved. Thank you very much. Just briefly. Let me address the question that I asked the affilee. Where is the evidence that Lopez was told that about Tovar's conversation before he testified? Was that in the 2007 affidavit? That is correct, Judge Bennett. There is an allegation by Mr. Lopez that he was told that information prior to trial. And remember, another thing about the timing that's very important. Where do we find that Lopez says that he was told that? In his declaration that we filed with the habeas petition in the California Supreme Court. The closest things I can see are paragraphs 5 and 7. And they told the story of Ann Marie Harrison making a statement to Juan Tovar, and I just adopted their story. It doesn't say they told the story to me. I mean, it's very murky. It's almost like a passive voice, like, you know, I came to understand. We don't know how he came to understand. That's true, Judge Bybee, but there's no basis for him to have learned that from any other source other than his conversations with police after that point. Of course, this was his opportunity. This was your opportunity to, you know, drive this one home. And, again, on paragraph 7, I adopted the police and the prosecutor's story that Ann Marie Harrison said these words to Juan Tovar. It doesn't say where he got this. I mean, where's the Napoli claim? Where's the Brady claim in that kind of statement? I think that the inference is there that that's the only source that he would have learned it from. I was not the lawyer at the time the declaration was obtained, so I can't explain what counsel's thinking was. Would I have drafted it differently? Certainly I would have, but I think it's good enough to get us. You only would have drafted it differently if you knew different facts. Of course, of course. But I have spoken to Mr. Lopez since then, and I don't want to go outside the record, so I will stop at that point. But my point is that we really need an evidentiary hearing here. That's what an evidentiary hearing is for, to go into these details, and so a judge can look at Mr. Lopez. If you accept the proposition under Duval that they credited the allegations in the petition, the allegations in the petition were supported by the declaration and the other evidence, and then you get to materiality. We don't need to show that they knew that it was false. Even if they didn't know it was false, if it undermines confidence in the outcome, then we are able to obtain an evidentiary hearing. What's your best case or best argument for the evidentiary hearing? Based on the, I mean, Earp v. Cullen, that's a case in which they say you're entitled to a hearing in federal court. If you have a prima facie case, and then Duval is the case in the California Supreme Court where it says if you make prima facie allegations, you're entitled to an evidentiary hearing. That would be an evidentiary hearing in California. Yes, and then Earp v. Cullen is the case that you would have here when you get to federal court because after Penholster, what happens is that if you find that the California Supreme Court decision was unreasonable, that is, there is no reasonable basis for them to deny this without an evidentiary hearing, and that's really what our fundamental point is. You then go to federal court, and then you have the question of whether you've stated a prima facie case in federal court. That's Earp v. Cullen, and we have done that. And in conclusion here, I would just say that this is really the hypothetical case that Justice Breyer talked about in his concurring opinion in Penholster. It really does raise that question, and you really can't get around it. I mean, they said these facts are true, and they denied it summarily. All we want and all Ms. Harrison wants, we're not asking for a new trial at this point. We're asking to go to the next step. That is that when you have someone who's serving 40 to life that has a claim that's supported by these detailed facts, you should have an opportunity to put a witness on the stand and let a judge make a determination about whether he believes Mr. Lopez. Thank you. Thank you. We thank both of you for the argument as well. Well done.
judges: Bybee, Bea, Christen